IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | CRIMINAL NO. 1:12CR038 |
| | ) | |
| KURAYE TAMUNOIBI AKUIYIBO, | ) | Count 1 |
| (a/k/a "G") | ) | Conspiracy to Commit Money Laundering |
| (a/k/a Gerald) | ) | 18 U.S.C. § 1956(h) |
| (Counts 1-7; 9-10) | ) | |
| | ) | Count 2 |
| OTASOWIE CHRISTOPHER ASUEN, | ) | Conspiracy to Travel/Use Interstate Facilities |
| (a/k/a Otas) | ) | in Aid of Racketeering Enterprises |
| (a/k/a Gene) | ) | 18 U.S.C. §§ 1952(a)(1), 1952(a)(3), 371 |
| (Counts 2, 5-7) | ) | |
| | ) | Counts 3, 5-6 |
| ALAFAKA PATIENCE OPUIYO, | ) | Interstate Travel/Use of Interstate Facilities |
| (a/k/a Amy) | ) | in Aid of Racketeering Enterprises |
| (a/k/a Tracy) | ) | 18 U.S.C. §§ 1952(a)(2), 2 |
| (Counts 1-2; 9-10) | ) | |
| | ) | Counts 4, 7 |
| NASSIM TABATABAI, | ) | Use and Carry a Firearm During and In |
| (a/k/a Naz) | ) | Relation to a Crime of Violence |
| (Counts 1-2; 8) | ) | 18 U.S.C. §§ 924(c)(1)(A)(ii), 2 |
| | ) | |
| JENNIFER CHURCHILL, | ) | Count 8 |
| (a/k/a Jennifer Nukul) | ) | Money Laundering |
| (Count 2) | ) | 18 U.S.C. § 1957(a) |
| | ) | |
| KIANA CHERRIE McKELVIN, | ) | Counts 9-10 |
| (a/k/a Vicky) | ) | Interstate Travel in Aid of Racketeering |
| (Count 2) | ) | Enterprises |
| | ) | 18 U.S.C. §§ 1952(a)(1), 2 |
| Defendants. | ) | |
| | ) | Forfeiture |
| | ) | 18 U.S.C. §§ 981, 982, 2461 |

**JANUARY 2012 TERM - AT ALEXANDRIA**

**INDICTMENT**

THE GRAND JURY CHARGES THAT:

## BACKGROUND

At all times pertinent to this Indictment:

Beginning in and around June 2009 and continuing through the return date of the Indictment, defendants KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald) (hereafter, AKUIYIBO) and ALAFAKA PATIENCE OPUIYO (a/k/a Amy, a/k/a Tracy) managed and operated an online prostitution business, under the guise of an escort service, known as "Classy DC Escorts," (hereinafter, CLASSY) based in the metropolitan Washington, D.C. area. CLASSY marketed women over the internet to engage in prostitution, that is, sexual acts with customers (hereinafter, "johns") in exchange for money in locations in the Eastern District of Virginia and elsewhere, including the District of Columbia, Maryland, New York and Ohio. Defendants AKUIYIBO and OPUIYO were aided and abetted by others, including defendants OTASOWIE CHRISTOPHER ASUEN (a/k/a Otas, a/k/a Gene), NASSIM TABATABAI (a/k/a Naz), JENNIFER CHURCHILL (a/k/a Jennifer Nukul), KIANA CHERRIE McKELVIN (a/k/a Vicky) and other unindicted co-conspirators.

## ROLES OF THE DEFENDANTS

1.      KURAYE TAMUNOIBI AKUIYIBO established, owned and operated CLASSY and opened bank accounts used by CLASSY using the names of fictitious companies such as Kwizz Productions and Investments, LLC, and later, Boyton LLC. AKUIYIBO also used violence and threats of violence to maintain his position and authority and to manage and control the affairs of CLASSY.

2.      OTASOWIE CHRISTOPHER ASUEN ran an affiliated prostitution business

2

called DMV Indies, formerly Prime DC, and 305 Playmates.  ASUEN aided and abetted an act

of violence against a CLASSY employee to further the prostitution business of CLASSY and

DMV Indies.  ASUEN used and shared resources with CLASSY, such as money collectors, an

internet web designer, and a photo editor.  ASUEN shared information with CLASSY about

various "johns" and prostitutes to enhance and facilitate his own prostitution businesses and that

of CLASSY.

3.    ALAFAKA PATIENCE OPUIYO managed the day-to-day operations of

CLASSY.  OPUIYO answered the phones for CLASSY, booked appointments for CLASSY

prostitutes with various "johns," screened "johns" to confirm they were not law enforcement,

directed the "johns" on how and where to meet the prostitutes, banned "johns" from using

CLASSY prostitutes for failure to pay, or other infractions, and collected and directed the

collection of proceeds from the prostitutes back to AKUIYIBO.

4.    NASSIM TABATABAI was the girlfriend of AKUIYIBO and, on occasion,

accepted the cash proceeds of prostitution from CLASSY employees.  TABATABAI conducted,

or aided and abetted, financial transactions through her checking account and with credit card

accounts on behalf of CLASSY to purchase travel and hotel expenses for CLASSY prostitutes.

TABATABAI also opened a bank account in her name in order to structure cash deposits of the

prostitution proceeds and facilitate the purchase of an Aston Martin luxury vehicle for

AKUIYIBO with these proceeds.

5.    JENNIFER CHURCHILL worked for CLASSY and affiliated prostitution

businesses run by ASUEN by receiving and editing, via electronic mail, digital images or

photographs of scantily-clad women in sexually suggestive poses who were recruited to work as

3

prostitutes for CLASSY or affiliated prostitution agencies. CHURCHILL digitally enhanced or altered the photographs of the women, for a fee, and sent them back electronically to defendants AKUIYIBO and ASUEN. The photographs altered by CHURCHILL were posted online as advertisements for prostitution by CLASSY and affiliated prostitution businesses.

6.     KIANA CHERRIE McKELVIN answered the phones and booked appointments for CLASSY prostitutes with various "johns," screened "johns" to confirm they were not law enforcement, directed the "johns" on how and where to meet the prostitutes, and directed the collection of proceeds from the prostitutes back to defendant AKUIYIBO.

## GENERAL ALLEGATIONS

7.     Defendant AKUIYIBO operated his prostitution business by recruiting, directing, managing, and overseeing women willing to engage in sexual activity with clients for money, maintaining contact with various johns, preserving and maintaining the reputation of his prostitution business and receiving payment for prostitution services provided by the women. Defendant AKUIYIBO also engaged in actual and threatened acts of violence, extortion and induced fear of future acts of violence against CLASSY employees and prostitutes in order to maintain and control his prostitution business.

8.     Defendants AKUIYIBO and OPUIYO operated CLASSY by use of multiple facilities of interstate commerce, including an Internet web site ("classydcescorts.com"), electronic mail (email), cellular telephones, automobiles that traveled on interstate highways, automated bank teller machines (ATM's), Federal Express, "Paypal," Moneygram and Green Dot prepaid value-added cards.

9.     Defendant AKUIYIBO, aided and abetted by other persons, and conspiring with

4

other persons, used the CLASSY website to recruit, solicit and entice women from the United States and Canada to work as prostitutes, to market women for prostitution by posting sexually provocative photographs of and personal information about the women and to solicit "johns" and inform "johns" when certain women would be available for prostitution in a particular city or at a particular location.

10.     Defendants AKUIYIBO and OPUIYO, aided and abetted by other persons, and conspiring with other persons, used the Internet, electronic mail and cellular telephones to, among other things, make travel and lodging arrangements for women to visit cities for the purpose of prostitution on behalf of CLASSY; communicate with women working as prostitutes for CLASSY; arrange for the collection, transfer and deposit of the proceeds of prostitution, communicate with "johns" to arrange appointments with CLASSY prostitutes, and to keep various types of business records, such as an appointment calendar and a contact list for CLASSY employees and "johns."

11.     Defendant AKUIYIBO, aided and abetted by other persons, and conspiring with other persons, placed online advertisements soliciting "johns" for paid sexual encounters with women working as prostitutes for CLASSY on Internet websites, including Eros.com and Backpage.com. Defendant AKUIYIBO paid for these online advertisements using a Visa credit card in his name.

12.     Defendant AKUIYIBO, aided and abetted by other persons, and conspiring with other persons, hired women to work for CLASSY as prostitutes, under the name of "escorts" or "companions" in order to conceal the true nature of their illicit activities (i.e., exchanging sexual services for money) from law enforcement.

5

13.     Defendant AKUIYIBO selected, or directed the women to select, different or fictitious first names for themselves as a "working name" to use in online advertisements for prostitution on the CLASSY website.  The use of "working names" by CLASSY concealed the true identity of the prostitutes from law enforcement and "johns."

14.     Once the women were hired by CLASSY, defendant AKUIYIBO, aided and abetted by unindicted co-conspirators, took digital images or photographs of the women, posed in sexually provocative positions, to post on the CLASSY website as advertisements for prostitution.

15.     Prior to posting the images of the women on the website, defendants AKUIYIBO and ASUEN sent the images of the women, via various electronic mail accounts to defendant CHURCHILL to edit.  Defendant CHURCHILL digitally enhanced or altered the images, including the removal of tattoos or the blurring of facial features, by the use of a computer program.  Defendant CHURCHILL knew that CLASSY was a prostitution business and otherwise assisted in the promotion and carrying on of CLASSY's prostitution business by enhancing or altering the images or photographs of the women advertised on the CLASSY website.

16.     After posting the digital images of the women on the CLASSY website as advertisements for prostitution, defendant AKUIYIBO added information about each of the women on the CLASSY website, such as their "working name," their physical features, sexual services offered, dates of availability, locations and hourly rates for in-call or out-call appointments.

17.     To schedule an appointment, a "john" would contact one of the telephone

6

numbers listed on the CLASSY website, usually by telephone or text message, to schedule an appointment with a prostitute and to communicate about the time and location of appointments. On behalf of CLASSY, defendants OPUIYO and McKELVIN answered the incoming telephone calls. Defendants OPUIYO and McKELVIN would "verify" the "johns" by asking them to send a blank email from their employer's email account and/or by asking personal information from the prospective "johns," such as their telephone number and whether he was a prior customer or had used an affiliated prostitution service.

18.    Once a "john" was "verified," defendant OPUIYO or McKELVIN scheduled an appointment for them with a CLASSY prostitute. On occasion, defendant OPUIYO contacted employees of affiliated prostitution businesses, such as DMV Indies, in order to share information about prospective "johns" for verification purposes and/or to "ban" certain "johns" from using prostitutes of affiliated agencies. Defendants OPUIYO and McKELVIN kept a computerized calendar for appointments and contact information for many of the "johns," prospective "johns," banned "johns" and prostitutes working for CLASSY. Defendant OPUIYO also kept handwritten notes or records on behalf of CLASSY, including monies owed by the prostitutes to CLASSY.

19.    Defendant AKUIYIBO, aided and abetted by others and conspiring with others, made the travel arrangements, including airline flights, Amtrak travel and hotel reservations, on behalf of the women who were traveling to work as prostitutes for CLASSY in their true names. Defendant AKUIYIBO booked some of these travel arrangements online using Priceline.com, Orbitz.com and Hotwire.com. Defendant AKUIYIBO paid for some of the travel expenses of the CLASSY prostitutes using a Citibank credit card in the name of a third party or using a Bank

of America bank account in the fictitious business name of Kwizz Productions, and later,

Boyton, LLC. The signatory on the account for Kwizz Productions was defendant AKUIYIBO.

The signatories for Boyton LLC, were defendants AKUIYIBO and OPUIYO.

20.    During the conspiracy, UCC-1 drove his car in interstate commerce to pick up

CLASSY prostitutes at Washington Ronald Reagan National Airport (DCA) in the Eastern

District of Virginia, Thurgood Marshal Baltimore Washington International Airport (BWI) in

Maryland or the Amtrak train station in the District of Columbia and drive them to their

destination hotel in the Eastern District of Virginia and elsewhere in the metropolitan

Washington, D.C. area.

21.    In other instances, the CLASSY prostitutes would take cabs or airport shuttles to

their designated hotel, as instructed by defendants AKUIYIBO, OPUIYO or McKELVIN.

Defendants AKUIYIBO and/or defendant OPUIYO sent  instructions to the women, usually

through a text message to a cellular telephone, about the hotel's location.  Defendants

AKUIYIBO, OPUIYO and McKELVIN directed the CLASSY prostitutes to check into the hotel

in a room that had been reserved for her in her true name or in the name of another CLASSY

prostitute.

22.    After confirming the hotel and room number with the prostitutes, defendants

OPUIYO and McKELVIN would contact the john, typically over the cellphone, to advise him to

which room he should go.  The prostitute would contact defendants OPUIYO and/or defendant

McKELVIN to advise when she was ready for her next appointment and when she had

completed an appointment.

23.    Each of the "johns" typically paid the women in cash at the start of the

8

appointment in exchange for sexual acts. Defendant OPUIYO or defendant AKUIYIBO would often mediate between "johns" and CLASSY prostitutes if and when disputes arose concerning the nature and quality of services provided and failure to pay fees in full. Defendant OPUIYO would also "ban" "johns" from future appointments with CLASSY prostitutes, at her discretion, for any number of reasons including failure to pay or missing scheduled appointments. Defendant OPUIYO shared the identities of banned "johns" with affiliated prostitution services, such as DMV Indies.

24.    Defendant AKUIYIBO allowed the CLASSY prostitutes to keep sixty (60) percent of the payments from the "johns," plus any tips, minus approximately fifty (50) percent of the cost of travel and lodging, and required them to remit to CLASSY forty (40) percent of the fees paid by the "johns."

25.    Defendants OPUIYO or McKELVIN directed the prostitutes to pay the entire amount owed to CLASSY on a daily basis. Defendant OPUIYO made and prepared daily reports for defendant AKUIYIBO indicating how much money each woman owed to CLASSY based on their scheduled appointments and whether or not they had paid her. Defendant OPUIYO sent these reports to defendant AKUIYIBO via electronic mail.

26.    The women working as prostitutes for CLASSY were directed to pay their portion of the funds owed to CLASSY by providing cash to another CLASSY prostitute, directly to defendant OPUIYO, UCC-1 or others, as directed by defendant AKUIYIBO. On occasion, defendant AKUIYIBO directed the prostitutes to purchase prepaid debit Green Dot cards and deposit CLASSY's portion of their proceeds onto the Green Dot card, and provide that account information to him so he could transfer the money into an account he controlled.

9

27.    Defendant OPUIYO, UCC-1, and others at the direction of defendant

AKUIYIBO, deposited CLASSY's prostitution proceeds into bank accounts held or controlled

by defendant AKUIYIBO by using ATM machines or counter deposits.  On occasion, defendant

AKUIYIBO directed UCC-1 to deposit prostitution proceeds directly into the bank account of

his girlfriend, defendant TABATABAI.

28.    Defendant AKUIYIBO engaged in prostitution offenses and committed,

attempted and threatened to commit acts of violence, such as assaults, beatings and assaults with

a firearm, extortion and intimidation against CLASSY prostitutes and employees in order to

command respect, maintain order and protect CLASSY's business enterprise.

COUNT ONE

CONSPIRACY TO COMMIT MONEY LAUNDERING

THE GRAND JURY FURTHER CHARGES THAT:

The allegations contained above in paragraphs 1 through 28 are re-alleged and

incorporated by reference into this Count as though fully set forth herein.

Beginning in and around June 2009, and continuing through on or about the date of the

return of this Indictment, in the Eastern District of Virginia and elsewhere, the defendants

KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald),  ALAFAKA PATIENCE

OPUIYO (a/k/a Amy, a/k/a Tracy), NASSIM TABATABAI (a/k/a Naz) did knowingly combine,

conspire, confederate and agree with each other and with other persons known and unknown to

the grand jury, to commit offenses against the United States in violation of Title 18, United

States Code Section 1956 and 1957, to wit:

(a)    to knowingly conduct and attempt to conduct a financial transaction

10

affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, prostitution, in violation of Title 18, United States Code, Section 2421 (Mann Act) and interstate travel and use of interstate facilities in aid of racketeering enterprises,  in violation of Title 18, United States Code, Section 1952(a) (Travel Act), with the intent to promote the carrying on of specified unlawful activity, to wit, prostitution, in violation of Title 18, United States Code, Section 2421 (Mann Act), and interstate travel and use of interstate facilities in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952(a) (Travel Act), and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b)     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, prostitution, in violation of Title 18, United States Code, Section 2421 (Mann Act) and interstate travel and use of interstate facilities in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952 (Travel Act), knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c)     to knowingly conduct and attempt to conduct financial transactions affecting

11

interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, prostitution, in violation of Title 18, United States Code, Section 2421 (Mann Act) and interstate travel and use of interstate facilities in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952(a) (Travel Act), knowing that the transaction was designed in whole or in part to avoid a transaction reporting requirement under state or federal law, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii); and

(d)    to knowingly engage, and attempt to engage, in monetary transactions by, through or to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, prostitution in violation of Title 18, United States Code, Section 2421 (Mann Act) and interstate travel and use of interstate facilities in aid of racketeering enterprises in violation of Title 18, United States Code, Section 1952(a) (Travel Act), in violation of Title 18, United States Code, Section 1957(a).

## OBJECTS OF THE CONSPIRACY

The objects of the money laundering conspiracy were to collect and spend money earned from prostitution in such a way as to avoid detection, seizure and forfeiture by the United States; conceal the true nature, location, source, ownership and control of the prostitution proceeds and to avoid reporting requirements.

12

## THE WAYS, MANNER AND MEANS OF THE CONSPIRACY

The ways, manner and means by which the defendants and the unindicted co-conspirators accomplished the conspiracy included, among others, the acts described in the following paragraphs of this count in the Indictment, which were committed in the Eastern District of Virginia, and elsewhere:

1.    It was part of the conspiracy that defendants OPUIYO and McKELVIN knowingly directed the collection of cash proceeds of prostitution from women working as prostitutes for CLASSY.

2.    It was part of the conspiracy that defendants AKUIYIBO and OPUIYO, and unindicted co-conspirators traveled, or caused others to travel, in interstate commerce by driving automobiles on the interstate highways to and from the Eastern District of Virginia, Maryland and the District of Columbia to pick up the cash proceeds of prostitution directly from CLASSY prostitutes.

3.    It was part of the conspiracy that defendants OPUIYO and McKELVIN and other unindicted co-conspirators used facilities in interstate commerce, such as cellphones and electronic mail, to facilitate the delivery, pick up and transportation of CLASSY's prostitution proceeds.

4.    It was part of the conspiracy that defendant OPUIYO and UCC-1 used automated bank teller machine (ATM) machines and drive-through windows at banks to deposit the cash proceeds of prostitution earned by CLASSY prostitutes into the bank accounts controlled or managed by defendant AKUIYIBO.

5.    It was part of the conspiracy that defendant AKUIYIBO directed defendant

13

OPUIYO and UCC-1 to deposit the cash proceeds of CLASSY's prostitution business into certain bank accounts defendant AKUIYIBO controlled, and in various amounts that he determined.

6.      It was part of the conspiracy that defendant AKUIYIBO used various bank accounts in the names of several legitimate-appearing businesses over which he had signatory authority, such as Kwizz Productions and Investments, LLC and Boyton, LLC, to manage the proceeds of CLASSY's prostitution business.

7.      It was part of the conspiracy that defendant AKUIYIBO used electronic communications to book and pay for travel and lodging reservations for CLASSY prostitutes.

8.      It was part of the conspiracy that defendants AKUIYIBO, OPUIYO and McKELVIN made and received interstate telephone calls and electronic communications to coordinate the interstate collection and distribution of CLASSY's prostitution proceeds.

9.      It was part of the conspiracy that defendant AKUIYIBO used, or directed others working for CLASSY to use Green Dot, a prepaid value-added card, and Moneygram for the interstate transportation of prostitution proceeds.

10.     It was part of the conspiracy that defendants AKUIYIBO, OPUIYO, TABATABAI and unindicted co-conspirators created, altered, forged and produced documents, or caused others to do so, to make it appear as if they had legitimate income.

11.     It was part of the conspiracy that defendants AKUIYIBO and TABATABAI purchased and acquired luxury items, such as an Aston Martin automobile, using the cash proceeds of prostitution

12.     It was part of the conspiracy that defendants AKUIYIBO, ASUEN and an

14

unindicted co-conspirator sent and received the proceeds of prostitution, via PayPal, to defendant CHURCHILL to pay for the altering and editing of digital images of women for use on their internet prostitution websites.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the defendants committed overt acts in the Eastern District of Virginia and elsewhere including, but not limited to, the following:

1.      On or about March 1, 2011, in Fairfax, Virginia, within the Eastern District of Virginia, defendant TABATABAI opened an account with Apple Federal Credit Union.

2.      On or about March 2, 2011, in New York, New York, defendant TABATABAI opened a personal checking account with Bank of America ending in 8806.

3.      On or about March 2, 2011, in New York, New York, defendant TABATABAI deposited $9,900 in cash derived from prostitution into her Bank of America account ending in 8806.

4.      On or about March 3, 2011, in New York, New York, defendant TABATABAI deposited $9,900 in cash derived from prostitution into her Bank of America account ending in 8806.

5.      On or about March 4, 2011, in New York, New York, defendant TABATABAI deposited $9,800 in cash derived from prostitution into her Bank of America account ending in 8806.

6.      On or about March 4, 2011, in Fairfax, Virginia, within the Eastern District

of Virginia, defendant TABATABAI caused a wire transfer in the amount of $29,455 to be made to her Apple Federal Credit Union account from her Bank of America account ending in 8806.

7.      On or about March 4, 2011, in New York, New York, defendant TABATABAI caused a wire transfer in the amount of $4,600 to be made to her Apple Federal Credit Union account from a Citibank account in her name ending in 8480.

8.      On or about March 5, 2011, in Fairfax, Virginia, defendant TABATABAI electronically applied for a used automobile loan in the amount of $85,945.00 to purchase a 2009 Aston Martin (VIN ending in 10894) through Apple Federal Credit Union.

9.      On or about March 5, 2011, in Fairfax, Virginia, defendant TABATABAI caused Apple Federal Credit Union to fund an automobile loan in the amount of $85,945.00 and caused Apple Federal Credit Union to generate an official check in the amount of $120,000.00 for the purchase of a 2009 Aston Martin (VIN ending in 10894).

10.     On March 5, 2011, in Fairfax, Virginia, defendant TABATABAI falsely stated on her used automobile loan application to Apple Federal Credit Union that her income was $17,750.83 per month.

11.     On or about March 9, 2011, in Fairfax, Virginia, defendant TABATABAI caused a wire transfer in the amount of $34,000 to be made from her Apple Federal Credit Union account to her Bank of America account ending in 8806.

12.     On or about March 21 , 2011, in Maywood, New Jersey, defendant TABATABAI purchased a 2009 Aston Martin DB9 (VIN SCFAD01EX9GA12409) for $136,175.

13.     On or about July 15, 2011, defendant OPUIYO deposited $1,130 in cash derived

from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of CLASSY.

14.     On or about July 21, 2011, defendant AKUIYIBO sent an electronic payment of $60.00 to defendant CHURCHILL via Paypal on behalf of CLASSY.

15.     On or about July 22, 2011, in Silver Spring, Maryland, defendant OPUIYO deposited $3,900.25 in cash derived from prostitution at a Bank of America drive-through teller into an account ending in 8719, held in the name of Boyton, LLC, on behalf of CLASSY.

16.     On or about August 1, 2011, defendant AKUIYIBO sent an electronic payment of $120.00 to defendant CHURCHILL via Paypal on behalf of CLASSY.

17.     On or about August 6, 2011, defendant AKUIYIBO sent an electronic payment of $200.00 to defendant CHURCHILL via Paypal on behalf of CLASSY.

18.     On or about August 31, 2011, defendant OPUIYO deposited $1,500 in cash derived from prostitution into a Bank of America account ending in 2544, held in the name of defendant AKUIYIBO, on behalf of CLASSY.

19.     On or about August 31, 2011, defendant OPUIYO deposited $1,000.25 in cash derived from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of CLASSY.

20.     On or about September 6, 2011, defendant OPUIYO deposited $7,400.25 and $2,000.25 in cash derived from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of CLASSY.

21.     On or about September 6, 2011, defendant AKUIYIBO sent a text message to

defendant OPUIYO's cellphone forwarding his Bank of America account number ending in 2544.

22.     On or about September 6, 2011, defendant OPUIYO deposited $100 in cash derived from prostitution proceeds into a Bank of America account ending in 2544, held in the name of defendant AKUIYIBO, on behalf of CLASSY.

23.     On or about September 7, 2011, defendant OPUIYO deposited $2,700.25 in cash derived from prostitution into a Bank of America account ending in 8719, held in the name of Boyton, LLC, on behalf of CLASSY.

24.     On or about September 7, 2011, defendant OPUIYO deposited $500 in cash derived from prostitution into a Bank of America account ending in 2544, held in the name of defendant AKUIYIBO, on behalf of CLASSY.

25.     On or about September 12, 2011, defendant OPUIYO deposited approximately $2,000.35 in cash derived from prostitution into a Bank of America account ending in 8719 held in the name of Boyton, LLC, on behalf of CLASSY.

26.     On or about September 16, 2011, defendant AKUIYIBO sent an electronic payment of $20 to defendant CHURCHILL via Paypal on behalf of CLASSY.

27.     On or about December 21, 2011, defendant AKUIYIBO directed UCC-1, via text message, to deposit prostitution proceeds in the amount of $2,370 into AKUIYIBO's Bank of America account ending in 2544.

28.     On or about December 22, 2011, defendant AKUIYIBO directed UCC-1, via text message, to deposit prostitution proceeds in the amount of $2,940 into AKUIYIBO's Bank of America account ending in 2544.

18

29.    On or about December 23, 2011, defendant AKUIYIBO directed UCC-1, via text message, to deposit prostitution proceeds in the amount of $3,089 into AKUIYIBO's Bank of America account ending in 2544.

(All in violation of Title 18, United States Code, Section 1956(h)).

COUNT TWO

### CONSPIRACY TO TRAVEL IN INTERSTATE COMMERCE/USE FACILITIES IN INTERSTATE COMMERCE IN AID OF RACKETEERING ENTERPRISES

THE GRAND JURY FURTHER CHARGES THAT:

The Grand Jury incorporates by reference paragraphs 1 through 28 of this Indictment, as well as overt acts 1 through 29 of Count One of this Indictment, as though fully restated and re-alleged herein.

From in and around June 2009 through on and about the date of the return of this Indictment, in the Eastern District of Virginia and elsewhere, defendants KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald), OTASOWIE CHRISTOPHER ASUEN (a/k/a Otas, a/k/a Gene), ALAFAKA PATIENCE OPUIYO (a/k/a Amy, a/k/a Tracy),  NASSIM TABATABAI (a/k/a Naz), JENNIFER CHURCHILL (a/k/a Jennifer Nukul) and KIANA CHERRIE  McKELVIN (a/k/a Vicky) did unlawfully, knowingly and unlawfully combine, conspire, confederate and agree together and with others known and unknown to the grand jury to commit the following offenses against the United States:

(a)     to knowingly travel, and cause others to travel, in interstate and foreign commerce with intent to distribute the proceeds of an unlawful activity, to wit, a business enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421, and thereafter did distribute, attempt to distribute, and aid and abet the distribution of the proceeds of a business enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421;

(b)     to knowingly use, and cause others to use, facilities in interstate and foreign commerce with intent to distribute the proceeds of an unlawful activity, to wit, a business

20

enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421, and thereafter did distribute, attempt to distribute, and aid and abet the distribution of the proceeds of a business enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421;

(c)      to knowingly travel, and cause others to travel, in interstate and foreign commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of any unlawful activity, that is, a business enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421, and did promote, manage, establish, carry on and facilitate a business enterprise involving prostitution offenses; and

(d)      to knowingly use, and cause others to use, facilities  in interstate and foreign commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of any unlawful activity, that is, a business enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421, and did promote, manage, establish, carry on and facilitate a business enterprise involving prostitution offenses.

## OVERT ACTS

1.      On or about September 17, 2009, in Bethesda, Maryland, defendant AKUIYIBO brandished a firearm and threatened a former CLASSY prostitute (hereafter, witness A).

2.      On or about June 1, 2010, defendant AKUIYIBO emailed flight information to a woman (hereafter, witness B) who had previously responded to one of CLASSY's internet advertisements soliciting prostitutes.

3.      On or about June 2, 2010, witness B traveled from Houston, Texas to DCA, in the Eastern District of Virginia to engage in sexual activity with "johns" for money on behalf of CLASSY.

4.      In and around September 2010, in Washington, D.C., defendant AKUIYIBO assaulted UCC-1 and brandished a firearm during the beating.

6.      On or about January 21, 2011, Witness B traveled to the Eastern District of Virginia from outside the Commonwealth of Virginia to engage in sexual activity with "johns" for money on behalf of CLASSY.

7      On or about July 21, 2011, defendant CHURCHILL sent and received electronic communications to and from defendant AKUIYIBO on his cellphone confirming receipt of digital images and seeking payment via PayPal.

8.      On or about July 22, 2011, defendant OPUIYO traveled in interstate commerce from the Westin Hotel in Vienna, Virginia, to Silver Spring, Maryland, to distribute the proceeds of prostitution on behalf of CLASSY by depositing the proceeds in a Bank of America account.

9.      On or about July 23, 2011, defendant OPUIYO traveled in interstate commerce from the Marriott Courtyard hotel in McLean, Virginia to the Hilton Washington in the District of Columbia to distribute the proceeds of prostitution on behalf of CLASSY by depositing the proceeds in a Bank of America account.

10.      On or about September 14, 2011, in College Park, Maryland, defendant OPUIYO sent a priority overnight Federal Express package to defendant AKUIYIBO in Miami, Florida.

11.      On or about September 14, 2011, defendant OPUIYO traveled from Maryland to

Vienna, Virginia, to pick up prostitution proceeds from a CLASSY prostitute at the Homestead Suites hotel.

12.     On or about September 14, 2011, in Fairfax County, Virginia, within the Eastern District of Virginia, defendant OPUIYO possessed in her silver 2008 Honda Accord approximately $5,255 in prostitution proceeds, along with receipts from Federal Express, a Bank of America deposit slip and a spiral notebook containing records from CLASSY's prostitution business.

13.     On or about September 15, 2011, in Miami, Florida, defendants AKUIYIBO and OPUIYO telephoned Federal Express to check on the delivery status of the priority overnight package shipped from Maryland by defendant OPUIYO on September 14, 2011.

14.     On or about September 16, 2011, defendant AKUIYIBO sent an electronic communication to defendant ASUEN seeking contact information for defendant CHURCHILL.

15.     On or about December 20, 2011, within the Eastern District of Virginia, and elsewhere, defendant McKELVIN directed the collection of prostitution proceeds on behalf of CLASSY.

16.     On or about December 21, 2011, within the Eastern District of Virginia, and elsewhere, defendant McKELVIN directed the collection of prostitution proceeds on behalf of CLASSY.

17.     On or about December 22, 2011, within the Eastern District of Virginia, and elsewhere, defendant McKELVIN directed the collection of prostitution proceeds on behalf of CLASSY.

(All in violation of Title 18, United States Code, Sections 1952(a)(1), 1952(a)(3) and 371).

23

<u>COUNT THREE</u>

<u>USE OF INTERSTATE FACILITIES IN AID OF RACKETEERING ENTERPRISES</u>

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 17, 2009, in the Eastern District of Virginia and elsewhere, defendant KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald) did knowingly use, and cause others to use, facilities in interstate and foreign commerce with intent to commit a crime of violence, to wit, assault in the first degree, in violation of *Maryland Code,* Section 3-202(a)(2)(i), to further an unlawful activity, that is, a business enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421, and thereafter did perform and attempt to perform a crime of violence to further unlawful activity.

(In violation of Title 18, United States Code, Sections 1952(a)(2) and 2.)

24

COUNT FOUR

USE OF A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 17, 2009, in the Eastern District of Virginia, and elsewhere, defendant KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald) did knowingly use, carry and brandish a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is: interstate travel and use of interstate facilities to commit a crime of violence in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952(a)(2), as set forth and charged in Count Three of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2).

## COUNT FIVE

## INTERSTATE TRAVEL IN AID OF RACKETEERING ENTERPRISES

THE GRAND JURY FURTHER CHARGES THAT:

In and around September 2010, the exact date being unknown, in the Eastern District of Virginia and elsewhere, defendants KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald)  and OTASOWIE CHRISTOPHER ASUEN (a/k/a Otas, a/k/a Gene), did knowingly travel, and cause others to travel, in interstate and foreign commerce, with intent to commit a crime of violence, to wit, assault with a dangerous weapon, in violation of *D.C. Code,* Section 22-402, to further an unlawful activity, that is, a business enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421, and thereafter did perform and attempt to perform a crime of violence to further unlawful activity.


(In violation of Title 18, United States Code, Sections 1952(a)(2) and 2).

## COUNT SIX

### USE OF INTERSTATE FACILITIES IN AID OF RACKETEERING ENTERPRISES

THE GRAND JURY FURTHER CHARGES THAT:

In and around September of 2010, the exact date being unknown, in the Eastern District of Virginia and elsewhere, defendants KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald) and OTASOWIE CHRISTOPHER ASUEN (a/k/a Otas, a/k/a Gene), did knowingly use, and cause others to use, facilities in interstate and foreign commerce with intent to commit a crime of violence, to wit, assault with a dangerous weapon, in violation of *D.C. Code,* Section 22-402, to further an unlawful activity, that is, a business enterprise involving prostitution offenses, in violation of Title 18, United States Code, Section 2421, and thereafter did perform and attempt to perform a crime of violence to further unlawful activity.

(In violation of Title 18, United States Code, Sections 1952(a)(2) and 2.)

<u>COUNT SEVEN</u>

<u>USE OF A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE</u>

THE GRAND JURY FURTHER CHARGES THAT:

In and around September of 2010, in the Eastern District of Virginia, and elsewhere, defendants KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald) and OTASOWIE CHRISTOPHER ASUEN (a/k/a Gene Asuen, a/k/a Christopher Asuen), did knowingly use, carry and brandish a firearm, and did aid, abet and assist one another in the commission of this offense, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is: the interstate travel and use of interstate facilities in interstate commerce in aid of racketeering enterprises, in violation of Title 18, United States Code, Sections 1952(a)(2) and 2, as set forth and charged in Counts Five and Six of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2).

## COUNT EIGHT

## MONEY LAUNDERING

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 5, 2011, in Fairfax, Virginia, within the Eastern District of Virginia, and elsewhere, defendant NASSIM TABATABAI did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 which was derived from specified unlawful activity, that is prostitution, in violation of Title 18, United States Code, Section 2421.


(In violation of Title 18, United States Code, Sections 1957(a)).

29

## COUNT NINE

### USE OF INTERSTATE FACILITIES IN AID OF RACKETEERING ENTERPRISES

THE GRAND JURY FURTHER CHARGES THAT:

On or about July 23, 2011, in McLean, Virginia, within the Eastern District of Virginia and elsewhere, defendants KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald) and ALAFAKA PATIENCE OPUIYO (a/k/a Amy, a/k/a Tracy), did knowingly travel, and cause others to travel, in interstate commerce with intent to distribute the proceeds of an unlawful activity, to wit, a business enterprise engaged in prostitution, in violation of Title 18, United States Code, Section 2421, and thereafter did perform and attempt to perform an act to distribute the proceeds of unlawful activity.

(In violation of Title 18, United States Code, Sections 1952(a)(1) and 2).

30

COUNT TEN

USE OF INTERSTATE FACILITIES IN AID OF RACKETEERING ENTERPRISES

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 14, 2011, in Fairfax County, Virginia, within the Eastern District of Virginia and elsewhere, defendants KURAYE TAMUNOIBI AKUIYIBO (a/k/a "G," a/k/a Gerald) and ALAFAKA PATIENCE OPUIYO (a/k/a Amy, a/k/a Tracy), did knowingly travel, and caused others to travel, in interstate commerce with intent to distribute the proceeds of any unlawful activity, to wit, a business enterprise engaged in prostitution, in violation of Title 18, United States Code, Section 2421, and thereafter did perform and attempt to perform an act to distribute the proceeds of unlawful activity.

(In violation of Title 18, United States Code, Sections 1952(a)(1) and 2).

31

## FORFEITURE

Defendants are hereby on notice that, pursuant to Federal Rule of Criminal Procedure 32.2, if convicted of the money laundering conspiracy count charged in this Indictment, Count 1, the defendants shall forfeit all property, real or personal, involved in the offense. If convicted of any of the Interstate Travel and Use of Interstate Facilities in Aid of Racketeering Enterprises as charged in this Indictment, the defendant(s) shall forfeit all property, real or personal, which constitutes or is derived from proceeds traceable to such violation. The forfeitable property includes, but is not limited to the following:

(a) a sum of money equal to $4,000,000.00 in United States currency, representing the amount of proceeds obtained as a result of prostitution;

(b) one 2009 Aston Martin DB9 bearing VIN SCFAD01EX9GA12409, registered in the name of Nassim Tabatabai;

(c) one 2006 Land Rover Range Rover HSE bearing VIN SALMF15496A221867, registered in the name of Nassim Tabatabai;

(d) one 2008 Honda Accord bearing VIN 1HGCP26748A057320, registered in the name of Alafaka Opuiyo;

(e) one 2007 Honda CR-V bearing VIN JHLRE48577C000217, registered in the name of Alafaka Opuiyo;

(f) all proceeds contained in Bank of America account ending in 2544 (held in the name of Kuraye AKUIYIBO);

(g) all proceeds contained in Bank of America account ending in 8719 (held in the name of Boyton, LLC);

(h) the defendant shall forfeit substitute property, up to the value of the forfeitable property described above (i.e., $4,000,000.00 in United States currency), if by any act or omission of the defendant, the $4,000,000.00 in United States currency, or any portion thereof:

    (1)    cannot be located upon the exercise of due diligence;

    (2)    has been transferred or sold to, or deposited with, a third party;

32

(3)    has been placed beyond the jurisdiction of the Court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be divided
without difficulty.

In addition, if convicted of any of the counts in the Indictment charging use and carrying

of a firearm during and in relation to a crime of violence, the defendant(s) shall forfeit all

firearms and ammunition involved in or used in such violation(s).


(Pursuant to Title 18, United States Code, Sections 924(c), 981(a)(1)(C) and  982(a)(1)
and to Title 18, United States Code, Section 2461(c)).


A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.
_____
FOREPERSON


NEIL H. MACBRIDE
UNITED STATES ATTORNEY


*Kimberly R. Pedersen*

Kimberly R. Pedersen
Assistant United States Attorney
Patricia M. Haynes
Assistant United States Attorney