FILED
IN OPEN COURT

MAY 16 2012

CLERK . . . . . . COURT
. . . . . . . . . . . .

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 1:12CR038 |
| | ) |
| KURAYE TAMUNOIBI AKUIYIBO, | ) |
| | ) |
| Defendant. | ) |

### STATEMENT OF FACTS

The parties stipulate that the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. Beginning in and around 2008, the defendant created Classy DC Escorts (Classy), an internet prostitution business. In order to establish Classy, the defendant placed online advertisements on www.backpage.com and www.eros.com to solicit women throughout the United States and Canada to work as prostitutes, primarily in the Washington, D.C. metropolitan area.

2. The defendant owned and operated Classy and managed the daily operations of the business from his various residences. The defendant directed the actions of the prostitutes and employees of Classy. Beginning in and around June 2009, Classy operated in several states, including Virginia, Maryland, Washington, D.C., New York and Ohio.

3. The defendant, together with others, doing business as Classy DC Escorts, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose

members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The purpose of the enterprise was to enrich the members and associates of the enterprise through the operation of a prostitution business and to promote and enhance the enterprise and its members' and associates' activities.

4. The defendant, with the help of Kobla Fiagbedzi created and maintained a website, www.classydcescorts.com, to establish, manage, promote and carry on his prostitution business. The Classy website posted pictures of various women, their physical characteristics, their "working name," the types of sexual services they would provide and the hourly rates.

5. In and around 2008, and to allay suspicion that he was generating illegal proceeds from a prostitution business, the defendant opened a business account at Bank of America in the name of Kwizz Productions and Investments, LLC.

6. The defendant communicated with the women answering Classy's ads using telephones or electronic communication, such as text messages or emails. The defendant made it known to the women that they were expected to engage in sexual activity with clients for money and that Classy would keep 40% of the hourly rate charged.

7. The defendant used the internet to make online hotel reservations for the Classy prostitutes, most of whom lived outside the metropolitan D.C. area, and to book airline reservations for their travel to the Eastern District of Virginia and elsewhere. The defendant caused the Classy prostitutes to travel in interstate commerce to engage in prostitution.

8. The defendant communicated with the Classy prostitutes about their travel plans

and gave them instructions on where to go and what to do upon their arrival. After the women arrived at their hotels, the defendant took their photographs, or arranged for others to take their photographs, in their hotel rooms.

9. The defendant emailed photographs of the Classy prostitutes to Jennifer Churchill (a/k/a Jennifer Nukul), a photoshop editor based in California. The defendant instructed Churchill to enhance the photographs of the women and to create a "watermark" in the middle of each photograph which stated: "Classy DC Escorts."

10. The defendant traveled in interstate commerce, and directed others to travel in interstate commerce, to collect the proceeds of prostitution from the Classy escorts who temporarily stayed and worked in hotels in Virginia, Maryland, Washington, D.C., New York and Ohio.

11. The defendant employed others, such as Alafaka Opuiyo (a/k/a Amy) and Kiana McKelvin (a/k/a Vicky), to answer the telephones for Classy and to schedule appointments for the Classy prostitutes with customers. These Classy call-takers "screened" the incoming callers in order to verify that the callers were, in fact, interested in hiring women for sexual services. The Classy call-takers asked for personal information from their clients in order to "screen" them.

12. The defendant used facilities in interstate commerce, such as cellphones or email, to direct Alafaka Opuiyo (a/k/a Amy) to deposit the proceeds of prostitution that she collected from the Classy prostitutes into his Kwizz Productions bank account. When the Bank of America closed that account, the defendant opened another account in the name of Boyton LLC

in order to receive Classy's proceeds. The defendant also used other bank accounts in the names of third parties to deposit Classy's proceeds.

13. Beginning in and around 2009, the defendant and his friend, Otasowie Christopher Asuen (a/k/a Gene), who owned and operated Prime DC and later, DMV/Indys, shared information with one another about their respective prostitution businesses in order to enhance their efficiency. For example, the Classy call-takers shared their "references" with the call-takers of Prime DC and DMV/Indys. The defendant and Asuen also shared information with one another about their various employees and prostitutes and shared the services of various money collectors.

14. In 2010, the defendant and Asuen used and shared the services of Kobla Fiagbedzi, a friend and trusted employee, who traveled each night in interstate commerce to pick up the proceeds of prostitution from their prostitutes. The defendant also entrusted Fiagbedzi to deposit Classy's prostitution proceeds into various banks accounts or to hold onto large amounts of cash.

15. In and around September 2010, the defendant learned that Kobla Fiagbedzi, a Classy employee, had been involved with a Classy prostitute and was making plans to open a rival prostitution business. The defendant told Asuen what he had learned about Fiagbedzi and decided to confront Fiagbedzi about it because he believed that this development would threaten Classy's operations.

16. During the confrontation with Fiagbedzi, the defendant became very angry. The defendant punched Fiagbedzi about his head and face. The defendant also struck Fiagbedzi with the power cord from a laptop computer. The defendant assaulted Kobla Fiagbedzi with a

4

dangerous weapon in order to maintain and increase his position of authority as the owner and operator of Classy DC Escorts.

17.     On January 28, 2011, in Miami, Florida, the defendant appeared at the hotel room of a Classy prostitute, "Tracy," posing as a photographer. While inside her room, the defendant took photographs of "Tracy." Then, the defendant demanded that "Tracy" pay back $1,000 that he said she owed to Classy. The defendant threatened to hurt "Tracy" if she did not pay back the money. "Tracy" agreed to pay back the money at a later date and the defendant took her social security card and cellphone before leaving the room.

18.     In early March 2011, the defendant gave his girlfriend, Nassim Tabatabai, over $30,000 in prostitution proceeds to deposit into her Bank of America account in order to purchase an Aston Martin for him.

19.     On or about March 5, 2011, in Fairfax, Virginia, the defendant and his girlfriend electronically applied for a used automobile loan, in the amount of $85,945.00, through Apple Federal Credit Union, in order to purchase a 2009 Aston Martin.

20.     On or about March 21, 2011, in Maywood, New Jersey, the defendant's girlfriend purchased a 2009 Aston Martin DB9 (VIN SCFAD01EX9GA12409) for him for approximately $136,175.

21.     From in and around June 2009 through on or about January 25, 2012, Classy DC Escorts employed over 100 prostitutes. The gross proceeds generated by Classy DC Escorts's prostitution business during this time was in excess of $1,600,000.

22.     The acts taken by the defendant, KURAYE TAMUNOIBI AKUIYIBO, in

furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: *Kimberly R. Pedersen*
Kimberly R. Pedersen
Assistant United States Attorney
Patricia Haynes
Assistant United States Attorney


After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, KURAYE TAMUNOIBI AKUIYIBO, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
KURAYE TAMUNOIBI AKUIYIBO
Defendant

6

I am Kuraye Tamunoibi Akuiyibo's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Stuart Sears, Esq.
Attorney for Defendant