# ZWERLING, MOSELEY & SEARS, P.C.

ATTORNEYS AND COUNSELORS AT LAW

JOHN KENNETH ZWERLING
ADMITTED: NEW YORK, VIRGINIA,
DISTRICT OF COLUMBIA

STUART ALEXANDER SEARS
ADMITTED: VIRGINIA,
DISTRICT OF COLUMBIA

114 NORTH ALFRED STREET
ALEXANDRIA, VIRGINIA 22314

TELEPHONE: 703-684-8000
FACSIMILE: 703-684-9700
LAW@ZWERLING.COM

ANDREA L. MOSELEY
ADMITTED: VIRGINIA,
DISTRICT OF COLUMBIA

CARY J. CITRONBERG
ADMITTED: VIRGINIA

July 16, 2012

*Sent via E-mail and first-class mail*
Karen Moran
Senior United States Probation Officer
401 Courthouse Square
Alexandria, Virginia 22314
Karen_Moran@vaep.uscourts.gov

Re:   *United States v. Kuraye Akuiyibo*, Case No. 1:12cr38
      <u>Objections to the Presentence Investigation Report</u>

Dear Ms. Moran:

Please accept this letter as Mr. Akuiyibo's formal objections and/or corrections to several paragraphs contained in the Presentence Investigation Report ("PSR"). As always, I appreciate your work in preparing this report. As you will see, Mr. Akuiyibo's objections are limited to some general accusations levied by several cooperating sources and his objections do not impact your sentencing Guideline calculations.

Specifically, Mr. Akuiyibo objects to the inclusion of various allegations made by cooperating sources that Mr. Akuiyibo denies, never admitted to, and are not included in his Statement of Facts. Mr. Akuiyibo requests that those portions of his PSR be removed on the basis that their inclusion could seriously impact his Bureau of Prisons ("BOP") designation, the application of any public safety factors, his ability to perform certain occupations while incarcerated, sentencing credit, visitor and mail privileges and could impact his eligibility for halfway house release. Moreover, now is the only opportunity for Mr. Akuiyibo to object to inaccuracies or false information in his PSR. Undisputed allegations in a PSR will be viewed as admissions by the BOP and will not be reevaluated.

While you may not agree that all that we have raised warrants exclusion, we respectfully request that of what remains, Mr. Akuiyibo's denials and explanations of these sections be included in the final PSR that will be forwarded to the BOP. The paragraphs Mr. Akuiyibo seeks to amend or correct are as follows:

Paragraph 32:

Mr. Akuiyibo asks that this paragraph be amended to remove the sentences providing that C.A. "responded to an on-line advertisement and spoke to a male about a modeling job" and that

1

# ZWERLING, MOSELEY & SEARS, P.C.

"[a]ccording to C.A., Akuiyibo informed her that she was not there to model but would work as a prostitute for him." These statements are demonstrably false as revealed by the documentary evidence available in this case. The initial e-mail conversations between C.A. and Mr. Akuiyibo are available and are contrary to her sworn and unsworn statements to law enforcement. The e-mails establish that C.A. clearly knew she was traveling to work for an escort service and knew that it would involve sex for money. At several points in the conversation, before she had ever traveled to work for Classy, C.A.:

1. provided "oh and I meant to say I'll prety [sic] much do anything except…the greek thing! not a big fan of that!"[1]
2. stated that she preferred to only do "outcalls"[2]
3. asked for the actual Classy website so she could check it out before agreeing and was provided with the address,
4. expressed doubt regarding her ability to make $7,000 per week given "the way the escort business is here [Ft. Lauderdale],"
5. explained that she was currently negotiating with another agency at the same time she was speaking with Mr. Akuiyibo,
6. asked how much she would be making by hour,
7. asked if she could stay in D.C. for two weeks because she really needed to make some money,
8. asked how many calls she would take per night and expressed relief that she would have more than three customers a day: "sweet..I was afraid it might just be one to three a day."[3]

These e-mail conversations occurred before C.A.'s first trip to D.C. to work for Classy. At no point during the conversation does either party discuss the prospect of modeling. It should also be noted that when shown the e-mail she sent Mr. Akuiyibo responding to the escort advertisement, C.A. told law enforcement that it was her e-mail address and her picture attached to the e-mail but that she had not been the one to send the e-mail. Her claims are not credible given the substantial back and forth between the two parties over the ensuing days. Any statement or insinuation that Mr. Akuiyibo lied to C.A. about the purpose of the trip and that he only told her for the first time when she was in a hotel room that she was going to be a prostitute is not true, not supported by the evidence, and should be struck from the PSR.

Paragraph 33:

Mr. Akuiyibo adamantly denies the allegations made in paragraph 33 that he ever threatened to kill C.A. if she left Classy. C.A. did not live in the D.C. area and only traveled to D.C. two or three times to work with Classy. On each occasion she left when her "tour" was done and she was not harmed or threatened. The very nature of the business is that many of the prostitutes work for themselves and partner up with different agencies in various cities in order to have assistance in making arrangements, lining up clients, verifying the johns, and advertising their arrival. Most

---

[1] "Greek" is a term used in the prostitution business to refer to anal sex.
[2] "Outcall" is a term used in the prostitution business to indicate that a prostitute is willing to travel to the john's home or hotel room as opposed to an "incall" where the john would travel to the prostitute's hotel room.
[3] *See* Attachment 1 (E-mail conversations between C.A. and Mr. Akuiyibo).

# ZWERLING, MOSELEY & SEARS, P.C.

prostitutes worked for several agencies and there was nothing different or unusual about C.A.'s arrangement with Classy. Indeed, when C.A. initially mentioned considering working for another agency, Mr. Akuiyibo did not respond in a hostile manner. Rather, he advised her that Classy would "back off" if she would prefer, implied that she would not have to reimburse Classy for the plane ticket that had already been purchased, and suggested that it would be a waste of more time and money to make further arrangements if she remained unsure. *See* Attachment 1.

Mr. Akuiyibo also adamantly denies that he brandished a handgun or pellet gun on C.A., ordered her to strip and otherwise threatened her. While Mr. Akuiyibo did show up unexpectedly at C.A.'s hotel room it was not to try and get her to be his boyfriend or to secure a date, as she reported to law enforcement.[4] In reality, C.A. advised Mr. Akuiyibo that she would not be working for Classy anymore because she accused Classy of not doing an adequate job of screening their johns and because of the conflicts she had with Classy's scheduler, Ms. Opuiyo. Although she apparently denies this, C.A. also had left on a previous trip without providing Classy with its share of the proceeds. Mr. Akuiyibo was advised by a john that C.A. was working for an agency in Maryland and was currently in town. Mr. Akuiyibo called that agency and booked an appointment with C.A. He showed up for the appointment and she was startled to see it was him. Far from pulling a gun on her and threatening her, Mr. Akuiyibo told her that he was there to prove to her that the agency she was working with did not screen their johns and to ask her to give Classy another shot.

Mr. Akuiyibo subsequently left the hotel room and shortly thereafter received a phone call from the woman who ran the other agency, "The Girl Next Door" or "TGND," for whom C.A. was working. They argued with each other over what had occurred and she threatened to ruin his business by reporting him to the police. The next day, C.A. went to the police station and provided the report. C.A. did not advise law enforcement that she was in Maryland working as a prostitute and instead stated that she was in town with a friend looking for work in the D.C. area. Importantly, there are some e-mails between Mr. Akuiyibo and C.A. from the time period after she stopped working for Classy. Even though Mr. Akuiyibo asks in those emails for C.A. to come back and work for Classy, and that she return the money Classy is owed, they are far from threatening.[5]

Paragraph 35:

Mr. Akuiyibo adamantly denies that he ever threatened to "put [CS-1's] ass in a trunk." He also denies that he was upset with CS-1 because she planned to open her own agency in Texas. Mr. Akuiyibo had no reason to be upset with CS-1 regarding what she planned to do in Texas or anywhere else for that matter. Classy did not operate in Texas. Moreover, most of the women who worked for Classy only partnered up with Classy in cities where Classy operated and most of the women also prostituted in other areas of the country, where they partnered up with local agencies to perform similar functions – booking rooms, travel arrangements, appointments, and screening johns.

---

[4] It should be noted that in her initial conversation with police, C.A. did not mention Mr. Akuiyibo's alleged request for companionship, whether as a girlfriend or a date.

[5] *See* Attachment 1, *E-mail dated August 22, 2009* ("[Mr. Akuiyibo]: hey, where are you? Im sure in Europe somewhere. Whats the plan here? I still want you back and I need the rest of my money as well. Please let me know, thx."); *E-mail dated September 10, 2009* ("[Mr. Akuiyibo]: hello, I have apologized over and over again, do you plan on coming back or giving me the money you owe me? I really want you to come back, fyi, thx.").

3

# ZWERLING, MOSELEY & SEARS, P.C.

Paragraph 40:

The allegations in this paragraph expand upon the facts surrounding Mr. Akuiyibo's confrontation with J.M. in Florida that is reflected in his Statement of Facts. As noted in the PSR, Mr. Akuiyibo admits that this altercation occurred but several of the allegations contained in paragraph 40 were not included in the Statement of Facts. In particular, Mr. Akuiyibo adamantly denies that he had any weapon at the time of this incident, firearm or pellet gun. Mr. Akuiyibo further denies that he ever used a phone cord to threaten J.M., ever threatened to choke her, and ever hit her with a cell phone. Mr. Akuiyibo admits as true those facts provided in his Statement of Facts.

Paragraph 44:

Mr. Akuiyibo adamantly denies that he ever assaulted Kobla Fiagbedzi during this incident at a hotel in Tysons Corner. Mr. Akuiyibo asserts that although he and Fiagbedzi had verbal confrontations on several occasions, including this one, he never physically assaulted Fiagbedzi other than the incident to which he pled guilty.

Paragraph 45:

Mr. Akuiyibo adamantly denies that he ever possessed or brandished a firearm, or the pellet gun, during the incident described in this paragraph. It should be noted that Asuen, who was present for the altercation, did not indicate that Mr. Akuiyibo brandished or even possessed a firearm during this incident. (*See* PSR ¶ 54). Furthermore, regardless of Fiagbedzi's claims that Mr. Akuiybio brandished a firearm, which is contradicted by Mr. Akuiyibo and Asuen, we submit it is incorrect to state that Fiagbedzi claimed that the pellet gun recovered by law enforcement was a "different color" than the one he claims Mr. Akuiyibo brandished. Both the pellet gun recovered and the picture Fiagbedzi produced depicting the type of weapon he saw, were silver in color. Asuen also told law enforcement that the pellet gun they recovered and the one he saw on a table following the incident with Fiagbedzi was silver. Asuen also told law enforcement he assumed the pellet gun he saw on the table was the same one he owned.

Paragraph 106:

Perhaps slightly less controversial than the above, Mr. Akuiyibo asks that this paragraph be amended to reflect that his sister is divorced from her husband.

Thank you again for your efforts in preparing this report and perhaps we can speak over the phone or in person after you have had a chance to review this letter.

Sincerely,

Stuart Alexander Sears
*Counsel for Kuraye Akuiyibo*

4